IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs October 2, 2019

## CARLOS SMITH v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 10-02597          Paula L. Skahan, Judge[1]**

_____

### No. W2018-00497-CCA-R3-PC

_____

The Petitioner, Carlos Smith, filed a petition for post-conviction relief in the Shelby County Criminal Court, seeking relief from his convictions of two counts of attempted second degree murder, one count of aggravated robbery, one count of especially aggravated burglary, one count of employing a firearm during the commission of a dangerous felony, two counts of aggravated assault, and one count of being a felon in possession of a handgun and resulting effective sentence of one hundred twenty years. After an evidentiary hearing, the post-conviction court denied relief, and this court affirmed the denial except for one issue: whether trial counsel were ineffective for failing to advise the Petitioner that he was a career offender, which resulted in his rejecting a plea offer. Regarding that issue, this court remanded the case to the post-conviction court because that court failed to making any findings. Upon remand, the post-conviction court concluded that the Petitioner was not entitled to relief. On appeal, the Petitioner maintains that he received the ineffective assistance of counsel because his trial attorneys failed to inform him of his career offender status. Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

Alexander D. Camp, Jackson, Tennessee, for the appellant, Carlos Smith.

Herbert H. Slatery III, Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Pamela Stark, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

_____

[1] Judge Skahan did not preside over the Petitioner's trial or sentencing.

## I. Factual Background

In April 2010, the Shelby County Grand Jury returned a seven-count indictment against the Petitioner. The trial court appointed an attorney from the public defender's office (hereafter "first trial counsel") to represent Petitioner, but another attorney (hereafter "trial counsel") represented the Petitioner at trial and sentencing.

In January 2012, a Shelby County Criminal Court Jury convicted the Petitioner of two counts of attempted second degree murder, a Class B felony; one count of aggravated robbery, a Class B felony; one count of especially aggravated burglary, a Class B felony; one count of employing a firearm during the commission of a dangerous felony, a Class C felony; two counts of aggravated assault, a Class C felony; and one count of being a felon in possession of a handgun, a Class E felony. On direct appeal of the Petitioner's convictions, this court summarized the proof at trial as follows:

> The facts of this case are largely undisputed. Late in the evening of November 2, 2009, the defendant, his girlfriend, Kelsie Brunner, and his friend, Carl Hall, decided to rob Reginald Milam. The defendant, Ms. Brunner, and Mr. Hall proceeded to a local Wal-Mart, where Ms. Brunner purchased two ski masks, a pair of gloves and a set of bolt cutters. Ms. Brunner then drove the men to Mr. Milam's residence. The defendant and Mr. Hall exited the vehicle, wearing the ski masks rolled up on their heads to resemble caps.
>
> The defendant and Mr. Hall accosted George McColley, [Jr.], and Richard Hardin, Mr. Milam's brother-in-law, as the two gentlemen were returning to Mr. Milam's residence, where they resided. The defendant and Mr. Hall, both of whom were armed and wearing ski masks, forced Mr. McColley and Mr. Hardin into the residence at gunpoint, demanding to see Mr. Milam. In a back bedroom of the residence, the gunmen encountered Mr. Milam, his wife, Lillian Hardin, and two of the couple's grandchildren. The defendant held them all, including Mr. McColley and Mr. Hardin, at gunpoint and demanded money. Renell Hardin, Mr. Milam's and Mrs. Hardin's adult daughter, heard the commotion and left her bedroom. When the defendant and Mr. Hall noticed her, they forced her into the back bedroom at gunpoint. At some point during the fracas, a struggle ensued, and the defendant and Mr. Hall shot both Mr. Hardin and Mr. McColley. Mr. McColley also managed to stab Mr. Hall in the back of the neck. The defendant and Mr. Hall then fled the scene with approximately $300 to $400 in cash, and they returned to Ms. Brunner's vehicle. The defendant

told Ms. Brunner that "the people in the house weren't compliant, that they got into a physical altercation and at that point [the defendant] had to shoot them."

State v. Carlos Smith, No. W2012-01931-CCA-R3-CD, 2013 WL 12182606, at *1 (Tenn. Crim. App. at Jackson, Aug. 29, 2013), perm. app. denied, (Tenn. Jan. 15, 2014).

At sentencing, the prosecutor advised the trial court that the Petitioner was a career offender, and the following colloquy occurred between trial counsel and the trial court:

> [Trial counsel]: Just for the record, before you start ruling on it, the first set of convictions about the aggravated robbery, they had sequential numbers and you can read by the numbers that they were, basically, occurred at the same time.
>
> And of course, whether or not you can consider them as single and separate convictions for the purpose of determining whether he is a career criminal, I think if they happened at the same time you can almost infer that from the sequential way the indictments were, are numbered, that it happened at the same time.
>
> And, I would submit, you know, I don't know what Your Honor's thinking is, but I would submit that as far as treating them as prior convictions that should be just one conviction, rather than the number of aggravated robberies—
>
> THE COURT: Normally, that would be correct [trial counsel], but because they are crimes of violence there's a specific [statute] that says, aggravated robbery and other crimes of violence are treated as separate and individual for purposes of sentencing.
>
> So even if he robbed six people or five people at the same time, the law says that they can be counted separately for the purposes of sentencing. So, I -
>
> [Trial counsel]: Very well, Your Honor, I just point that out--
>
> THE COURT: Cite your argument for the record and I know you make records that go up and get heard and sometimes the law changes, but the law as it presently stands is that if you commit a violent offense and there are multiple victims, each one of those count separately for the

purposes of sentencing, so, I'll note your exception but that's the law as I understand it to be.

Trial counsel also represented the Petitioner on direct appeal of his convictions. On appeal, the Petitioner argued that the trial court erred by denying his motion to sever the offenses and that the State violated Brady v. Maryland, 373 U.S. 83 (1963). Id. at *1. This court affirmed the Petitioner's convictions. Id. at *7. After our supreme court denied his application for permission to appeal, he filed a timely pro se petition for post-conviction relief raising various issues, including that he received the ineffective assistance of counsel. The post-conviction court appointed counsel, and counsel filed an amended petition. In the amended petition, one of the issues the Petitioner raised was that he received the ineffective assistance of counsel because first trial counsel and trial counsel failed to discuss the State's notice of enhanced punishment with him. He asserted that had they done so, he would have learned that he was a career offender and "would have likely pled guilty."

The post-conviction court held an evidentiary hearing. Relevant to this appeal, the following testimony was presented at the hearing:

> [Trial counsel testified that with] respect to plea offers, [he] "[d]efinitely" recalled discussing an offer with the petitioner. Although trial counsel could not recall the exact nature of the offer, he testified that it was "a pretty substantial offer" but that the petitioner refused to consider it. Trial counsel stated that his typical practice with respect to rejected plea offers was to "put the defendant on the witness stand," recount the plea offer, and have the defendant state "that he did not want the offer and he wanted a trial," although counsel could not recall with any specificity whether he had done so in this instance. Trial counsel testified that he had told the petitioner that "he would get a lot more time" if he was found guilty at trial and that he thought he had discussed with the petitioner his status as a career offender. Trial counsel agreed that the State's notice of impeaching conduct listed nine prior felony convictions and that counsel was on notice that the petitioner was a career offender. Trial counsel also conceded that, during the petitioner's sentencing hearing, he argued that several of the petitioner's prior aggravated robbery convictions should be considered as a single conviction for the purpose of calculating his sentencing range. When asked if he informed the petitioner that all of his prior aggravated robbery convictions counted as a single conviction for sentencing purposes, trial counsel responded that he did not believe he had discussed it with the petitioner "in that kind of detail" but that the petitioner

- 4 -

knew that if [he] was convicted at trial "that he would . . . certainly . . . get a lot more time than the State offered him."

. . . .

[On cross examination,] [t]rial counsel reiterated that the petitioner "was adamant . . . that he wanted a trial and he really didn't want to consider any offer." Counsel also noted that he had represented the petitioner on prior occasions and that he had a "pretty good relation[ship]" with the petitioner. Because trial counsel took over the petitioner's case nearly one year after the petitioner was charged with the instant crimes, he thought it was possible that the plea offer had already been extended to the petitioner when he had been represented by a member of the public defender's office, [first trial counsel], but that, in any event, he recalled "discussing the offer with" the prosecutor.

With respect to counsel's sentencing hearing argument that the petitioner's prior aggravated robbery convictions should count as only two convictions, trial counsel agreed that he had presented that argument to the trial court as a "plausible theor[y]."

. . . .

Pamela Fleming Stark testified that she was the prosecuting attorney for the petitioner's trial. Ms. Stark was "pretty sure that" there were no plea offers made to the petitioner during the time period in which trial counsel represented him. She acknowledged that trial counsel might "have asked [her] what the original offer was" and might "have attempted to take it to [the petitioner] in hoping that he could convince [her] to let him have it" but that, because the petitioner's case was already set for trial when trial counsel took over the case, Ms. Stark could not imagine extending an offer at that time. Ms. Stark agreed that co-defendant Carl Hall had entered an open plea on the day of trial; that Mr. Hall had "showed some remorse and begged to testif[y]"; and that she had argued in favor of Mr. Hall's receiving a lesser sentence than the petitioner because the petitioner's criminal record was substantially worse than that of Mr. Hall. Ms. Stark testified that she did not have a notation in the petitioner's file about a plea offer:

> This is the type of case a lot of times I won't even make an offer on because people were shot in their own home.

However, knowing [first trial counsel] and having worked with him for many years I probably would have given him something for no other reason than there was no support in this trial, the proof was so good.

We had DNA evidence not only from the ski masks that were found just a short distance, as I recall, from the hospital where they threw Mr. Carl Hall out to get treatment for his gunshot wounds. And then further down the road there w[as] a bag of, I think there was a glove that was thrown in a garbage can at a convenien[ce] store. And then further down in an abandon[ed] lot a bag with I believe the guns in it was there. And there was DNA off the guns as well as DNA off the other and there may have actually been ballistics in this case as well. All of which Ms. Brunner brought us back to and all of which came back to Carlos Smith.

. . . .

Meaning that —

. . . .

--I would have felt bad for the defense attorney that had the case. And I would [have] made an offer. So exactly what it was, it would [have] been high especially with [the petitioner] because he had a series of aggravated robberies and clearly in my opinion wouldn't have learned anything from it. I would [have] thought he was a very dangerous person. But I would have given an offer of some nature that would [have] been considerably lower than the hundred and twenty years that he got. I think probably something around sixty years. But [the petitioner] didn't want it.

. . . .

The petitioner testified that trial counsel never informed him that he was considered a career offender, but the petitioner conceded that the trial court informed him, prior to setting the case for trial, of the potential

sentence he was facing for each felony conviction. The petitioner recalled that, at his sentencing hearing, trial counsel argued to the court that the petitioner was not a career offender, and the petitioner testified that trial counsel never indicated to him that his six prior convictions of aggravated robbery, which all arose "at one time," would be counted as six separate felonies. The petitioner stated that he would not have proceeded to trial if he had been made aware of his potential exposure. The petitioner believed that he would be sentenced as a Range II offender.

According to the petitioner, the State had offered him a plea of 25 years at 100 percent service, and the petitioner recalled that the State extended this offer to him both while he was represented by [first trial counsel] and again when trial counsel took over his case.

On cross-examination, the petitioner denied that [first trial counsel] had ever discussed his potential exposure with him, even when [first trial counsel] presented the plea offer to the petitioner. The petitioner also denied that the trial court had ever informed him of his potential exposure, although he admitted that the trial court had voir dired him prior to setting the case for trial. The petitioner eventually conceded that the proof against him, including the testimony of his codefendants, DNA evidence, video surveillance footage from Walmart, and evidence that the vehicle and handgun were linked to the petitioner, was substantial.

[First trial counsel] testified for the State and stated that he had represented the petitioner until shortly before the petitioner's initial trial date, at which time trial counsel substituted in to represent the petitioner. [First trial counsel] admitted that he did not recall the petitioner with any specificity, but he testified that he "[a]bsolutely" would have informed his clients that prior convictions for violent felonies would not have been considered a single felony. [First trial counsel] denied that he ever would have set a case for trial without first informing his client of his potential exposure. With respect to the petitioner's status as a career offender, [first trial counsel] stated that he "[a]bsolutely" would have informed the petitioner of this information. [First trial counsel] testified that, if the petitioner had received a plea offer of 25 years at 100 percent service, he likely would have recommended that the petitioner take it "if the proof [was] that overwhelming" because 25 years would have been "better than the alternative if he were to go to trial." [First trial counsel] confirmed, however, that the decision of whether to accept a plea offer would have been ultimately left to the petitioner and that he never would have allowed

the petitioner to make such a decision without being fully informed of the potential sentence he would be facing.

On cross-examination, [first trial counsel] admitted that he did not recall the specifics of the petitioner's case, but he insisted that he "told [the petitioner] what his exposure was and told him what the offer was without any hesitation whatsoever."

Carlos Smith v. State, No. W2016-01087-CCA-R3-PC, 2017 WL 2730398, at *2-5 (Tenn. Crim. App. at Jackson, June 26, 2017).

The post-conviction court denied the petition, concluding that the Petitioner failed to establish by clear and convincing evidence that he received the ineffective assistance of counsel. Id. at *5. However, the court failed to make any findings regarding whether the Petitioner knew he was a career offender. Id. The Petitioner appealed the denial to this court. This court affirmed the denial of the petition as to most of the issues raised but remanded the case to the post-conviction court for the limited purpose of determining, based on the existing record, whether the Petitioner received the ineffective assistance of counsel because first trial counsel and trial counsel never told him that he qualified as a career offender. Id. at *7.

On December 15, 2017, the post-conviction court entered a written order, again denying the petition for post-conviction relief. In the order, the post-conviction court recounted trial counsel's testimony that he discussed a plea offer with the Petitioner, that it always was his practice to discuss a client's sentencing exposure with the client when discussing an offer, and that the Petitioner refused the offer. The court also recounted that first trial counsel testified that he "'[a]bsolutely'" would have told the Petitioner that the Petitioner was a career offender. The post-conviction court then stated as follows:

Through the testimony presented at this hearing . . . , it appears clear that Petitioner was a career offender, that both of Petitioner's attorneys leading up to trial would have made him aware of that, and that Petitioner was not interested in any offer made by the state. . . . At the post-conviction hearing, Petitioner testified that he underwent voir dire when [trial counsel] represented him before trial and again after one of his codefendants pled guilty. All of the post-conviction testimony from both legal counsel and [P]etitioner himself indicates that Petitioner was well aware of the risk of going to trial, but pressed on regardless.

The post-conviction court concluded that first trial counsel and trial counsel "properly informed Petitioner of his potential sentencing exposure vis-à-vis his career offender status." Accordingly, the court denied the petition for post-conviction relief.

## II. Analysis

To be successful in a claim for post-conviction relief, a petitioner must prove the factual allegations contained in the post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Further,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address

the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697).

On appeal, the Petitioner contends that the post-conviction court erred by denying his petition for post-conviction relief because he testified at the evidentiary hearing that first trial counsel and trial counsel did not inform him of his potential sentencing exposure as a career offender. He further contends that trial counsel's "inaccurate assertion" at sentencing that he did not qualify as a career offender "clearly indicates confusion" by trial counsel and supports his testimony that he was unaware of his career offender status when he rejected the State's plea offer. The State claims that the Petitioner is not entitled to relief because the post-conviction court accredited first trial counsel's and trial counsel's testimony that they informed the Petitioner of his sentencing exposure as a career offender. The State also claims that trial counsel's argument at sentencing "shows good advocacy" by trial counsel, not confusion. We agree with the State.

Our review of the evidentiary hearing transcript confirms that the Petitioner testified that the State made a plea offer twice before trial: once when he was represented by first trial counsel and again when he was represented by trial counsel. Trial counsel testified that he discussed the offer with the Petitioner and that the Petitioner was not interested in the offer. Trial counsel also testified that while he did not specifically remember telling the Petitioner that the Petitioner was a career offender, the Petitioner's status as a career offender was not in dispute and that "[w]e really did get into that when I told Mr. Smith what the offer was[.]" Likewise, first trial counsel testified that he "[a]bsolutely" would have told the Petitioner that the Petitioner was a career offender when he and the Petitioner discussed the offer because "without knowing what the exposure was, you can't very well evaluate an offer." The post-conviction court accredited first trial counsel's and trial counsel's testimony over that of the Petitioner. On appeal, this court generally defers "to a post-conviction court's findings with respect to witness credibility, the weight and value of witness testimony, and the resolution of factual issues presented by the evidence." Mobley v. State, 397 S.W.3d 70, 80 (Tenn. 2013).

As to trial counsel's argument at sentencing that the Petitioner did not qualify as a career offender, trial counsel stated to the trial court, "I would submit, . . . I don't know what Your Honor's thinking is, but I would submit that as far as treating them as prior convictions that should be just one conviction[.]" We do not think trial counsel's argument demonstrates confusion by trial counsel but demonstrates that trial counsel was making the only argument he could against sentencing his client as a career offender. In

any event, as noted by the State, first trial counsel testified that he also informed the Petitioner of the Petitioner's career offender status. Therefore, even if trial counsel was confused, we agree with the State that the Petitioner has failed to show that he is entitled to post-conviction relief.

### III.  Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

_____
NORMA MCGEE OGLE, JUDGE